```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
MICHAEL F. SOOTHERAN,

                      Plaintiff,                05-CV-0686

              v.                                **DECISION
                                                and ORDER**
JO ANNE B. BARNHART, Commissioner
of Social Security

                      Defendant.
_____
```

### INTRODUCTION

Plaintiff Michael F. Sootheran ("Plaintiff") brings this action pursuant to the Social Security Act § 216(i) and § 223, seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits.[1] Specifically, Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") Marilyn Zahm denying his application for benefits was not supported by substantial evidence contained in the record and was contrary to applicable legal standards.

Plaintiff moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)("Rule 12(c)"), seeking reversal of the Commissioner's ruling or, in the alternative, remand of the

---

[1] This case was transferred to the undersigned by the Honorable Richard J. Arcara, Chief Judge, United States District Court for the Western District of New York by Order dated April 5, 2007.

matter for a new hearing. The Commissioner cross-moves for judgment on the pleadings pursuant to Rule 12(c), on the grounds that ALJ Zahm's decision was supported by substantial evidence contained in the record and was based on the correct application of appropriate legal standards. For the reasons set forth below, I find that the decision of the Commissioner is supported by substantial evidence, and is in accordance with applicable law. I therefore grant the Commissioner's motion for judgment on the pleadings, and deny Plaintiff's motion for judgment on the pleadings.

## BACKGROUND

On February 1, 1999, Plaintiff, at that time 42 years-old, filed an application for Disability Insurance Benefits. Plaintiff claimed an inability to work since June 16, 1998, due to disc herniation, stenosis, pinched nerves, and shoulder problems. Plaintiff's application was denied initially on March 19, 1999, and again upon reconsideration on April 28, 1999. Thereafter, Plaintiff requested and appeared, with counsel, in an administrative hearing before ALJ Sy Rayner on October 7, 1999.

In a decision dated November 4, 1999, ALJ Rayner found that although Plaintiff's shoulder and spinal impairments were severe, the Plaintiff was not disabled within the meaning of

the Social Security Act. Plaintiff appealed to the Social Security Appeals Council ("Appeals Council") on November 8, 1999. After a significant delay in the administrative processing of Plaintiff's appeal, the Appeals Council remanded the case for rehearing on February 17, 2004, on grounds that the ALJ had improperly evaluated the evidence. The Appeals Council directed that the ALJ was to provide further consideration to treating source opinions, Plaintiff's subjective complaints, and Plaintiff's maximum residual functional capacity.

In a decision dated March 17, 2005, ALJ Zahm found that Plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on August 22, 2005. On September 29, 2005, Plaintiff filed this action.

## **DISCUSSION**

### **I.   Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings

are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Monqeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that her decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in

support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## II. **The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.**

ALJ Zahm found that Plaintiff was not disabled within the meaning of the Social Security Act. In doing so, she adhered to the Social Security Administration's five-step sequential evaluation analysis for evaluating applications for disability benefits. See 20 C.F.R. § 404.1520.[2] Under Step one of that process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (Transcript of Administrative Proceedings at pages 19, 31) (hereinafter "T.").

At Steps two and three, the ALJ found that Plaintiff had impairments, such as cervical spine disorder and left shoulder disorder, which were severe within the meaning of the

---

[2]Five-step analysis includes: (1) ALJ considers whether claimant is currently engaged in substantial gainful activity; (2) if not, ALJ considers whether claimant has severe impairment which significantly limits his physical or mental ability to do basic work activities; (3) if claimant suffers such impairment, third inquiry is whether, based solely on medical evidence, claimant has impairment which is listed in regulations Appendix 1, and if so, claimant will be considered disabled without considering vocational factors; (4) if claimant does not have listed impairment, fourth inquiry is whether, despite claimant's severe impairment, he has residual functional capacity to perform his past work; and (5) if claimant is unable to perform past work, ALJ determines whether claimant could perform other work. See id.

Regulations, but not severe enough to meet or equal, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P of Regulations No. 4. (T. at 29, 31-32). Further, at Steps four and five, the ALJ concluded that Plaintiff retained the residual functional capacity to perform sedentary work with limitations regarding no frequent turning of the neck and no use of ladders.[3] (T. at 30, 32). Although the ALJ determined that Plaintiff could not return to his past job as an electrician because it required activities beyond his residual functional capacity, she found that Plaintiff could perform such jobs as a lock assembler or toy assembler, jobs which existed in significant numbers in the Western New York region. (T. at 30, 32).

Based on the entire record, and particularly the medical evidence in the record, I find that the ALJ properly concluded that Plaintiff was not disabled.

> A. <u>The ALJ properly explained her reasons for disregarding the treating physician's opinions.</u>

In her analysis regarding Plaintiff's residual functional capacity for work, the ALJ considered evidence from Plaintiff's orthopedist, Dr. William N. Capicotto. Based on an

---

[3] Sedentary Work involves lifting no more than ten pounds and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a).

examination dated December 22, 1998, Dr. Capicotto opined that Plaintiff would be unable to return to gainful employment. (See T. at 289-90). On several subsequent examinations, between December 1998, and August 1999, Dr. Capicotto, opined that Plaintiff would be temporarily and totally disabled. (See, e.g., T. at 277, 313, 349). However, on August 12, 1999, Dr. Capicotto recanted his claim of total disability, and indicated that Plaintiff suffered from a moderate permanent partial disability. (T. at 346) (emphasis added). Therefore, over the course of 9 months, Dr. Capicotto expressed varying opinions in his reports.

Dr. Capicotto's varying opinions regarding Plaintiff's total and partial disability are not entitled to controlling weight because the determination of whether or not a claimant is disabled is a decision reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1)-(e)(3); see also Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). When findings are reserved to the Commissioner, the Commissioner will consider information that physicians provide, but must draw her own conclusions as to whether that information in consideration of the medical evidence in the record supports a finding of disability. Snell, 177 F.3d at 133.

Moreover, Dr. Capicotto's opinion is not entitled to controlling weight because there is other medical evidence contained in the record that contradicts Dr. Capicotto's opinions.

Plaintiff's primary internist, Dr. Hee K. Choi, gave assessments indicative of a capability to perform sedentary work. (T. at 301). While Dr. Choi, diagnosed Plaintiff to be suffering from severe spondylosis, he found that Plaintiff could sit up to eight hours per day in regards to work related activities. (T. at 301). However, Dr. Choi also indicated that Plaintiff could stand and/or walk less than two hours in an eight hour workday. (T. at 301). Dr. Choi did not observe any significant medically determinable findings to indicate Plaintiff's standing/walking limitation but rather based it solely on Plaintiff's own complaints.

Additionally, medical evaluations performed by three medical consultants found Plaintiff capable of performing some degree of sedentary work. (T. at 310, 376, 384).

Further, on November 23, 1998, Dr. Gunseli Sarpel, Plaintiff's treating neurologist, diagnosed Plaintiff with degenerative disc disease and joint disease of the cervical spine after examining Plaintiff's MRI, CT films and physically examining him. (T. at 364-66). Dr. Sarpel suggested physical

therapy and non-steroid anti-inflammatory medication and muscle relaxant. (T. at 366).

Plaintiff's workers' compensation carrier requested several evaluations from orthopedist, Dr. Melvin M. Brothman. (See, e.g, T. at 372). After physically examining Plaintiff and his medical reports, Dr. Brothman, on February 17, 1999, opined that Plaintiff could return to work but should avoid a job which would require excessive turning of his neck or climbing a ladder. (T. at 376).

After a subsequent evaluation on July 28, 1999, Dr. Brothman concluded that Plaintiff could return to a sedentary job on a part-time basis only. (T. at 384). After reexamining Plaintiff, approximately three months later, on November 4, 1999, Dr. Brothman assessed that Plaintiff had a moderate degree of disability. (T. at 391). Further, Dr. Brothman observed that during each of the three separate examinations, Plaintiff was not in acute distress. (See, e.g., T. at 383).

Therefore, in light of the entirety of the medical evidence contained in the record, the ALJ was correct in disregarding Dr. Capicotto's previous findings as controlling with regards to the ultimate issue of disability. See 20 C.F.R. § 404.1527(e)(1), (e)(3).

> B.  <u>The ALJ correctly found that Plaintiff's subjective complaints were not totally credible.</u>

Plaintiff claimed that he spent most of his day laying on the couch and that he was unable to perform household chores and other activities for the previous two years prior to his hearing. (T. at 63-67).

However, surveillance videos taken of the Plaintiff shows him capable of a significant level of physical activities.[4] Vincent Panzarella, owner of VIP Investigative Services, who was hired by Plaintiff's workers compensation insurance firm, submitted videos to the ALJ of Plaintiff standing and walking for prolonged periods and working with his hands on a motor vehicle. (Videotape #1 and #2 generally). At one point Plaintiff was seen on his knee and elbow to look under a van, and then proceeded to crawl under the van on his back. (T. at 28).

Plaintiff is also observed returning to his house attired in orange camouflage and carrying a rifle which he retrieved from the back of his truck with his left hand. (T. at 28). He is also observed carrying a bag (similar to a large bag of dog food) over his right shoulder. (T. at 28).

---

[4] Plaintiff objects to consideration of the video evidence on grounds that the video tapes have not been made part of the record in this action. The video tapes were, however filed with the Court on May 11, 2006 and accordingly the parties, the public and the Court have had access to the video tape evidence.

Therefore, Plaintiff's testimony concerning his disability is inconsistent with the video surveillance. The video clearly demonstrates that Plaintiff could not only move about freely but could perform automotive repairs and carry heavy items such as a rifle and a large bag. (T. at 28).

I find that in considering all of the evidence in the record, the ALJ correctly found that Plaintiff's testimony concerning the extent of his disability was not totally credible. (T. at 32).

    C.   <u>The ALJ properly found that there was no need for a more recent consultative medical examination.</u>

The ALJ's decision not to order a more recent consultative medical examination is also supported by substantial evidence in the record. The Social Security regulations require that a consultative medical examination shall be ordered when "[t]here is an indication of a change in your current condition that is likely to affect your ability to work, but the current severity of your impairment is not established." 20 C.F.R. §404.1519a(b)(5).

While Plaintiff's testimony claims deterioration in his condition, the lack of medical records for a period of almost five years, along with Plaintiff's January 5, 2005, emergency room records, indicates that his condition had not changed

significantly. (T. at 67, 69-70). Plaintiff testified that the last time he washed dishes, swept, and cooked was probably two years prior to his testimony. (T. at 67). Further, when asked why he stopped doing all those activities, Plaintiff stated that his neck condition had gotten worse and that he felt increasingly dizzy while walking. (T. at 69-70). However, from November 1999, until January 2005, Plaintiff provided no medical reports of his alleged deteriorating condition even though his testimony indicated that his workers compensation insurance would likely have covered any medication costs should he have required any medical treatment for his neck. (T. at 86).

Plaintiff's emergency room visit on January 5, 2005, indicated severe cervical ailments which were similar to medical findings made in 1999. (T. at 284, 413-27). The records included an MRI from which Dr. Barron observed, "severe degenerative changes in the cervical spine with sclerosis and disc space narrowing from C4-C7 levels." (T. at 414). Additionally, a large protrusion at the C5-C6 level was found to be "causing mass effect on the left side of the thecal sac and obliterating the left lateral recess and extending into the left C5-C6 foramen." (T. at 414-15). These findings were similar to the December 1998, MRI which

indicates, "severe degenerative disc disease" with three cervical levels of "disc narrowing and extensive posterior spurring." (T. at 284).

An MRI in January 2005, indicated that there were osteophytes encroaching on the intervertebral foramina on both sides at C6-C7 level. (T. at 414). This finding is equivalent to the December 1998, MRI assessing, "extensive narrowing of the exit foramen bilaterally at C4-C4 [sic], C5-C6 bilaterally and C6-7 on the right." (T. at 284).

Plaintiff's own testimony indicated that he voluntarily did not continue pain medication, was capable of holding a gallon of milk, going to the store, writing checks, and driving his grandson to and from school everyday. (T. at 59-85).

I find that because there is no objective change or worsening of Plaintiff's condition between his November 1999 and January 2005 MRI's, the ALJ was correct in concluding that Plaintiff's condition had not deteriorated. Additionally, Plaintiff did not seek any medical treatment and did not provide any records supporting a need for medical treatment for that five-year period. Plaintiff's claim of disability is unsupported by medical evidence and inconsistent with video surveillance, which clearly indicated Plaintiff's ability to

lift heavy objects and crawl under his vehicle to perform repairs.

## CONCLUSION

For the reasons set forth above, I grant Commissioner's motion for judgment on the pleadings. Plaintiff's motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____

MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         July 6, 2007